IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DIANNE FRYER and ) | |
| RONALD CAESAR, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:24-cv-583-MHT-CWB |
| ) | |
| FARMERS INSURANCE GROUP, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This civil action is in federal court after being removed from the Circuit Court of Barbour County, Alabama. (*See* Doc. 1). Removal was predicated upon diversity jurisdiction under 28 U.S.C. § 1332(a), and remand is being sought on grounds that complete diversity of citizenship is lacking. (*Id.*; *see also* Doc. 19). Resolution of the jurisdictional issue is dependent upon whether Jacob Janes is a proper defendant or whether he should be dismissed as having been fraudulently joined. After careful review and consideration, the Magistrate Judge concludes that the motion to dismiss (Doc. 11) filed by Janes is due to be granted and that the motion to remand (Doc. 19) filed by Plaintiffs is due to be denied.

**I. Procedural History**

Dianne Fryer and Ronald Caesar ("Plaintiffs"), citizens of Alabama, filed this action on August 12, 2024 in the Circuit Court of Barbour County, Alabama. (*See* Doc. 1-2 at p. 4). Named as defendants were (1) Farmers Insurance Group, (2) Foremost Insurance Company Grand Rapids, Michigan, and (3) Jacob Janes. (*See id.*). The underlying claims involve state law theories for breach of contract, bad faith failure to pay, bad faith failure to investigate, and negligent/wanton

1

failure to train and supervise—all arising from a fire loss to certain residential property in Eufaula, Alabama.  (*Id*. at pp. 4-8).

The defendants jointly removed proceedings to federal court on September 11, 2024.  (*See* Doc. 1).  Upon removal, Janes sought to be dismissed.  (*See* Doc. 11).  Plaintiffs in turn filed a motion to remand.  (*See* Doc. 19).  The dispositive issue before the court is whether Plaintiffs have stated any claim against Janes that could possibly give rise to liability.  If so, then Janes' Alabama citizenship precludes federal subject matter jurisdiction and requires that proceedings be remanded to the Circuit Court of Barbour County, Alabama.  If not, then Janes' citizenship is irrelevant to the jurisdictional analysis.

## II.   Removal Jurisdiction

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) ("[L]ower federal courts are empowered to hear only cases for which there has been a congressional grant of jurisdiction … .").  It thus is incumbent upon a federal court to assure itself "at the earliest possible stage in the proceedings" that it possesses jurisdiction.  *See Univ. of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

With respect to civil actions filed initially in state court, removal to federal court is authorized in circumstances where a district court would have had "original jurisdiction."  *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.");

*see also Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  And it falls upon the removing party to establish that such jurisdiction exists.  *See*, *e.g.*, *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("[T]he burden of establishing removal jurisdiction rests with the defendant seeking removal."); *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction."); *see also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010) ("[D]efendants may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal.") (citations omitted).

"While § 1332 allows plaintiffs to invoke the federal courts' diversity jurisdiction, § 1441 gives defendants a corresponding opportunity."  *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).  Nonetheless, because removal infringes upon state sovereignty and implicates central concepts of federalism, any jurisdictional doubts should be resolved in favor of remand.  *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.").  Stated differently, a plaintiff's right to choose the forum and a defendant's right to remove "are not on equal footing."  *Id*.

**III.  Discussion**

The Notice of Removal (Doc. 1) makes no assertion that removal jurisdiction was predicated upon a federal question under 28 U.S.C. § 1331.  Nor has the court's independent review of the record uncovered any issue that reasonably could be construed as "arising under the Constitution, laws, or treaties of the United States."  *See* 28 U.S.C. § 1331.  Therefore, unless the requirements of 28 U.S.C. § 1332(a) are satisfied, subject matter jurisdiction is absent over this removed action.  *See* 28 U.S.C. § 1441(a).

As pertinent here, 28 U.S.C. § 1332(a) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States." Plaintiffs "admit that the amount [in] controversy exceeds the sum of $75,000.00 exclusive of interest, attorney fees, and costs" (Doc. 19 at p. 13), and the undersigned finds from a review of the record (*see* Doc. 1 at p. 6, ¶ 7) that the removing parties have met their burden of showing by a preponderance of evidence that the amount in controversy "more likely that not" exceeds the jurisdictional threshold. *See Tapscott*, 77 F.3d at 1356-57; *see also Pretka*, 608 F.3d at 752.

The issue is whether there is a complete diversity of citizenship. *See Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005) ("Federal diversity jurisdiction under 28 U.S.C. § 1332 requires 'complete diversity'—the citizenship of <u>every plaintiff</u> must be diverse from the citizenship of <u>every defendant</u>.") (emphasis added) (citation omitted). The common Alabama citizenship of Plaintiffs on the one hand and Janes on the other generally would preclude the exercise of diversity jurisdiction. *See Hood v. Veazey*, No. 2:20-cv-712-ECM, 2021 WL 3713048, at *1 (M.D. Ala. Aug. 20, 2021) ("Plaintiffs' complaint alleges that one plaintiff and the defendants are citizens of the State of Alabama; therefore, there is not complete diversity and thus, no basis for diversity jurisdiction under 28 U.S.C. § 1332."). That being said, the Alabama citizenship of Janes may be disregarded if it is shown that he was fraudulently joined. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity.").

As relevant in this instance, fraudulent joinder exists "when there is no possibility that the plaintiff can prove a cause of action against the [non-diverse] defendant." *Triggs*, 154 F.3d at 1287; *see also Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011)

4

(citing *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).  The burden of establishing fraudulent joiner is a "heavy one," and the fact that a plaintiff may not ultimately prevail against a defendant does not mean that the plaintiff has not stated a cause of action for purposes of the fraudulent joinder analysis.  *See Crowe*, 113 F.3d at 1538; *see also Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) (stating that a removing party must show fraudulent joinder "by clear and convincing evidence").  Accordingly, it must be determined if there is any possibility that Plaintiffs can prove a cause of action against Janes on the asserted state law claims. *See Legg*, 428 F.3d at 1322 ("'[T]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties.'") (quoting *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998)) (emphasis removed).

### A.    Breach of Contract (Count One)

As to their breach of contract claim, Plaintiffs allege that "Defendants insured the Property according to the terms of the Policy between them and Plaintiffs" and that "Defendants breached their obligations to adequately investigate and pay Plaintiffs' claims brought under the Policy." (*See* Doc. 1-2 at p. 6, ¶¶ 8, 13).  Janes contends that Plaintiffs' breach of contract claim fails against him because he was not a party to the underlying insurance contract. (*Id.* at pp. 3-4; Doc. 1 at p. 5).  Plaintiffs counter that the breach of contract claim was properly asserted against all "Defendants"—including Janes. (*See* Doc. 19 at p. 6 & Doc. 1-2 at pp. 5-6, ¶¶ 8-14).

Under Alabama law, "[a] contract of insurance, like other contacts, is governed by the general rules of contracts." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001).  "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's

5

nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002). So Janes must be a contractual party in order to face contractual liability.

Beginning with the text of the Complaint, it is alleged that "Farmers Insurance Group and Foremost Insurance Company ... sold Dianne Fryer and Ronald Caesar … a homeowner's insurance policy." (Doc. 1-2 at p. 4). No allegation is made that Janes was involved in the sale/purchase process or that Janes was identified in the insurance policy as a party. A review of the insurance policy itself confirms that Janes is nowhere referenced as a party or as having any obligation thereunder. (*See* Doc. 11 at p. 3, Doc. 11-1, & Doc. 26 at p. 2).[1] The policy states that "We, us, and our mean the insurer named on the Declarations Page" and that "You, your, and yours mean the person, persons, or entity named on the Declaration Page." (*See* Doc. 11-1 at p. 26). The Declarations Page identifies Foremost Insurance Company Grand Rapids, Michigan as the underwriter. (*See id*. at p. 11). Again, no reference whatsoever is made to Janes. (*See id*.).

Plaintiffs point to two letters as indicating that Janes potentially could be deemed a party to the insurance policy. (*See* Doc. 19 at pp. 6-8). The first, dated August 11, 2022, is signed by Janes and uses the terms "we" and "us" when discussing the claim denial. (*See* Doc. 19-2 at p. 2:

---

[1] "[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Moreover, the "document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [a court] may consider such a document" so long as it is central to the plaintiff's claim. *Id. See also Solid Waste Disposal Auth. of City of Mobile, Alabama v. WM Mobile Bay Env't Ctr., Inc.*, No. CV 18-00438, 2019 WL 4007845, at *6-7 (S.D. Ala. Aug. 6, 2019), *report and recommendation adopted*, No. CV 18-00438, 2019 WL 3997267 (S.D. Ala. Aug. 23, 2019) (finding it appropriate to consider a contract attached to the plaintiff's motion to remand and a contract attached to the defendant's motion to dismiss because both were expressly referenced in the complaint, no party questioned the contents, accuracy, or authenticity of the documents, and the documents were at the center of the fraudulent joinder determination).

"Due to your breach of the insurance contract your claim is being denied and we will not be making a payment on your claim. If you choose to cooperate with the duties contained in your policy, please notify us within a reasonable period of time not to exceed thirty (30) days."). Plaintiffs additionally cite a December 6, 2022 letter signed by Janes in a similar manner. (*See* Doc. 19-3 at p. 1: "Thank you for choosing us to provide for your insurance needs. We value you as a customer and appreciate the opportunity to be of service."). In short, Plaintiffs contend that those letters provide evidence that Janes was communicating as if personally a party to the insurance policy. (*See* Doc. 19 at pp. 7-8).

But nothing in the letters comes close to creating even a possibility that Janes could be deemed a contractual party. As previously noted, neither the body of the insurance policy nor the associated Declarations Page makes any reference to Janes. The parties potentially obligated under the policy are identified as Farmers Insurance Group[2] and Foremost Insurance Company. (*See* Doc. 11-1 at pp. 11, 23). While it is accurate that Janes was the particular person who signed correspondence relating to the denial of Plaintiffs' insurance claim, he expressly did so in his official capacity as "Special General Adjuster" for "Foremost Insurance Company Grand Rapids, Michigan." (*See* Doc. 19-2 at p. 2 & Doc. 19-3 at p. 3). The letters also specifically state that the property was "insured by Foremost Insurance Company Grand Rapids, Michigan" (*see* Doc. 19-2 at p. 1), that "Foremost Insurance Company Grand Rapids, Michigan welcomes any additional information you wish to provide" (*see id.* at p. 2 & Doc. 19-3 at p. 1), and that suit may be filed "against Foremost Insurance Company Grand Rapids, Michigan" (*see id.*). And the letters were sent on letterhead for Farmers Insurance. (*See* Doc. 19-2 at p. 1 & Doc. 19-3 at p. 1).

---

[2] Farmers Insurance Group has sought dismissal on grounds that it is merely a "service mark" and not a legal entity capable of being sued. (*See* Doc. 10). A separate recommendation will be issued for its dismissal, and it too could be deemed fraudulently joined for the jurisdictional analysis.

7

A normal and natural reading of the letters in the surrounding context indicates that Janes is speaking as an <u>employee</u> of the obligated party and not as a contractual party himself. The Complaint acknowledges Janes' status as employee (*see* Doc. 1-2 at p. 2, ¶ 5), and the only direct involvement alleged against Janes is that he "handled" and "denied" Plaintiffs' claim. (*See* Doc. 1-2 at pp. 1, 5 ¶ 5). Because nothing in the record suggests that Janes was a contractual party, Plaintiffs cannot demonstrate the possibility of prevailing on a breach of contract claim against him under Alabama law. *See, e.g., Ligon Furniture Co. v. O.M. Hughes Ins., Inc.*, 551 So. 2d 283, 285 (Ala. 1989) (finding that insurance agent, claims adjusting company, and its employee were nonparties to plaintiff's insurance contract with insurer and therefore could not be liable for breach of contract); *see also Butler v. Allstate Indemnity Co., Inc.*, No. 3:09-cv-838, 2010 WL 381164, at *3 (M.D. Ala. Jan. 25, 2010) (finding employee fraudulent joined when the complaint alleged that the employee "made the decision, recommendation and/or took other action and … refused to provide the protection afforded under the policy" but failed to allege "that [he] was a party to the insurance contract"); *Allied Williams Companies, Inc. v. Am. Cas. Co.*, No. CV 07-0230, 2007 WL 9717746, at *2 (S.D. Ala. May 29, 2007) ("The mere 'handling' of an insurance claim does not make one a party to the insurance contract.").[3]

---

[3] Plaintiffs cite *McCain v. Lexington Ins. Co.*, No. CIV.A. 05-0615, 2005 WL 3098928, at *1 (S.D. Ala. Nov. 17, 2005), as support for the proposition that *Ligon* does not foreclose the possibility of contractual liability beyond the named insurer. (*See* Doc. 19 at pp. 9-10). Perhaps that is true in a general sense, but there must be some allegation upon which to base a finding that a defendant was a contractual party. As set out above, the Complaint and remand exhibits fail in that regard. Plaintiffs' attempt to invoke the "Voluntary Undertaking Doctrine" (*see id.* at pp. 8-13) likewise fails. The "Voluntary Undertaking Doctrine" is a tort law concept and would not afford any legal basis to characterize a defendant as a party to a contract. *See Yanmar Am. Corp. v. Nichols*, 166 So. 3d 70, 84 (Ala. 2014). Plaintiffs have cited no authority holding otherwise.

### B. Bad Faith Failure to Pay and to Investigate (Counts Two and Three)

"Under Alabama law, a bad faith claim is premised on the existence of an insurance contract and may be brought only against a party to that contract." *Cleavland v. Fidelity & Guaranty Life Ins. Co.*, No. 2:05-cv-655, 2005 WL 3115282, at *3 (M.D. Ala. Nov. 16, 2005) (citing *Ligon*, 551 So. 2d at 285). Accordingly, Plaintiff's purported claims for bad faith fail for the same reasons as the purported breach of contract claim. *Butler*, 2010 WL 381164 at *3.

### C. Negligent/Wanton Failure to Train and Supervise (Count Four)

The final claim asserted in the Complaint is predicated on allegations that "Defendants … had a duty to train and properly supervise [their] agents and employees to properly review and complete claims investigations" and that "Defendants ... breached their duty when they failed to properly train their employees regarding investigations and basis of claims denials." (Doc. 1-2 at p. 8, ¶¶ 27-28). The employees at issue are identified as "including, but not limited to Jacob Janes." (*Id*. at ¶ 29). It is alleged elsewhere in the Complaint that Janes "was employed by Defendants" and "handled this fire loss claim and denied the same." (*Id*. at p. 5, ¶ 5).

To the extent the claim for negligent/wanton failure to train and supervise is being asserted against Janes, it is logically inconsistent that Janes could have been responsible for training and supervising himself. Even if it were to be assumed that Janes was responsible for training and supervision <u>others</u> (which is not alleged in the Complaint), "Alabama law does not recognize a cause of action against a supervisor for that supervisor's negligent training or supervision of a subordinate." *Hand v. Univ. of Ala. Bd. of Trustees*, 304 F. Supp. 3d 1173, 1182 (N.D. Ala. 2018); *see also Ghioroaie-Panait v. Rolle*, No. 3:17-cv-698, 2020 WL 130892, at *5 (M.D. Ala. Jan. 10, 2020) ("Here, Plaintiff alleges that Spry was negligent in supervising Rolle, but it is undisputed that both Spry and Rolle were employed by Auburn. … Because Spry was not

9

Rolle's employer, Spry cannot be held liable for the alleged negligent supervision and training of Rolle."). There is no possibility then that Plaintiffs could prevail against Janes on the negligence/ wantonness theory asserted in the Complaint.

## IV.     Conclusion

For the reasons stated above, the Magistrate Judge hereby **RECOMMENDS** as follows:

- that Defendant Jacob Janes' Motion to Dismiss (Doc. 11) be granted;
- that Defendant Jacob Janes be dismissed from this action;
- that Plaintiffs' Motion to Remand (Doc. 19) be denied; and
- that this action be referred back to the Magistrate Judge for further proceedings.

It is **ORDERED** that all objections to this Recommendation must be filed no later than **September 9, 2025**. An objecting party must identify the specific portion(s) of factual findings/ legal conclusions to which objection is made and must describe in detail the basis for each objection. Frivolous, conclusive, or general objections will not be considered.

After receiving objections, the District Judge will conduct a *de novo* review of the challenged findings and recommendations. The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings. *See* 28 U.S.C. § 636(b)(1)(C). A party shall be deemed to have waived the right to challenge on appeal a District Judge's order to the extent it is based upon unobjected-to findings or recommendations. The court on appeal may review unobjected-to factual and legal conclusions only for plain error if necessary in the interests of justice. *See* 11th Cir. R. 3-1.

No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment ultimately entered by the District Judge.

**DONE** this the 26th day of August 2025.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**